**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| **LPL FINANCIAL LLC,** | § § § § § § § § § § § § § § § | |
| *Petitioner,* | | |
| vs. | | **Civil Action No. 4:26-cv-02120** |
| **EILEEN LAW CURE,** | | |
| *Respondent.* | | |

**PETITIONER LPL FINANCIAL LLC'S REPLY IN SUPPORT OF PETITION TO**
**CONFIRM ARBITRATION AWARD AND OPPOSITION TO RESPONDENT'S**
**MOTION TO VACATE, MODIFY, OR CORRECT THE ATTORNEY-FEE PORTION**
**OF THE ARBITRATION AWARD**

# **TABLE OF CONTENTS**

I.    Introduction and Summary of Argument .......................................................... 1

II.   Nature and Stage of the Proceeding and Statement of Issues ............................ 1

III.  Factual Background ......................................................................................... 3

IV.   Argument ........................................................................................................ 6

   A.   The fee award is within the arbitral panel's powers and does not meet the standard for vacatur under 9 U.S.C. § 10(a)(4) ........................................................................ 6

      1.   Cure does not identify a valid basis for vacatur under 9 U.S.C. § 10(a)(4). ............... 7

      2.   The typographical error in the award is not grounds to vacate. ................................. 7

         a    The record establishes that the arbitral panel intended to refer to California Civil Code Section 1717(a). .............................................................................................. 8

         b    The Tribunal also cited the arbitration agreements giving rise to the arbitration to render the fee award, thereby ending the Court's inquiry. ........................................... 9

            (a)    The fee award is within the arbitral panel's authority under the applicable contracts. ................................................................................................................. 10

            (b)    The fee award is mutual, final, and definite. ................................................. 12

      3.   The arbitral panel's reliance on multiple sources of authority to render the fee award is permissible and must be enforced. ................................................................. 13

   B.   Cure's request for modification, correction, or clarification fails to meet any legal standard. ................................................................................................................. 16

   C.   LPL is entitled to its attorney's fees in this proceeding. ............................................ 18

V.    Conclusion ..................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Laser Vision, P.A. v. Laser Vision Inst., L.L.C.*,
    487 F.3d 255 (5th Cir. 2007), *overruled on other grounds by Hall St. Assocs.,*
    *L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008)
    ...................................................................................................................2, 15, 16, 17

*Antwine v. Prudential Bache Sec., Inc.*,
    899 F.2d 410 (5th Cir. 1990) .......................................................................................14, 15

*Apache Bohai Corp., LDC v. Texaco China B.V.*,
    No. H-01-2019, 2005 WL 6112664 (S.D. Tex. Feb. 28, 2005), *subsequently*
    *aff'd sub nom. Apache Bohai Corp. LDC v. Texaco China BV*, 480 F.3d 397
    (5th Cir. 2007)........................................................................................................................17

*Cure & Assocs., P.C. v. LPL Fin. LLC*,
    No. 1:22-CV-00311 (E.D. Tex. filed Aug. 4, 2022).................................................................3

*Diverse Enterprises, Limited Company, L.L.C. v. Beyond International, Inc.*,
    827 F. App'x 422 (5th Cir. 2020),  ...............................................................2, 10, 11, 12

*Executone Info. Sys., Inc. v. Davis*,
    26 F.3d 1314 (5th Cir. 1994) .......................................................................................10

*Halliburton Energy Servs., Inc. v. NL Indus.*,
    553 F. Supp. 2d 733 (S.D. Tex. 2008) (Rosenthal, J.)........................................................15, 16

*Int'l Ass'n of Machinists & Aerospace Workers, Dist. 776 v. Texas Steel Co.*,
    639 F.2d 279 (5th Cir. 1981) .......................................................................................3

*Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.*,
    791 F.2d 1334 (9th Cir. 1986) .......................................................................................18, 19

*Lummus Glob. Amazonas S.A. v. Aguaytia Energy del Peru S.R. Ltda.*,
    256 F. Supp. 2d 594 (S.D. Tex. 2002), *decision modified on denial of*
    *reconsideration* (June 14, 2002) (Rosenthal, J.)...............................................................12, 13

*McVay v. Halliburton Energy Servs.*,
    608 F. App'x 222 (5th Cir. 2015) .......................................................................................12

*NAFTA Holdings, LLC v. First Nat'l Bank Grp. Inc.*,
    No. CV B: 13-221, 2014 WL 12588518 (S.D. Tex. Mar. 20, 2014) .......................................19

*Oil, Chem., & Atomic Workers Int'l Union v. Rohm & Haas, Tex., Inc.*,
    677 F.2d 492 (5th Cir. 1982) .......................................................................................17

*Oxford Health Plans LLC v. Sutter*,
  569 U.S. 564, 133 S. Ct. 2064 (2013)......................................................9, 10, 12, 13

*In re Penrod*,
  802 F.3d 1084 (9th Cir. 2015) ...............................................................................18

*Pillar to Post, Inc. v. Weible*,
  No. CIV.A. H-09-3227, 2010 WL 2636121 (S.D. Tex. June 29, 2010)...................19

*Soaring Wind Energy, LLC v. CATIC USA, Inc.*,
  333 F. Supp. 3d 642 (N.D. Tex. 2018), *aff'd sub nom. Soaring Wind Energy,*
  *L.L.C. v. Catic USA Inc.*, 946 F.3d 742 (5th Cir. 2020) .........................................15

*Space Data Corp. v. Hosie Rice LLP*,
  No. 20-cv-08256-JSW, 2021 U.S. Dist. LEXIS 263088 (N.D. Cal. Nov. 1,
  2021) ......................................................................................................................19

*Sullivan v. Feldman*,
  No. H-20-2236, 2022 U.S. Dist. LEXIS 228367 (S.D. Tex. Dec. 19, 2022)...........10

*United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*,
  484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)..............................................12

*United States Trinity Energy Servs., L.L.C. v. Se. Directional Drilling, L.L.C.*,
  135 F.4th 303 (5th Cir. 2025) .........................................................................2, 7, 10

*United Steel Workers of America v. Enterprise Wheel & Car Corp.*,
  363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)............................................14

**Rules and Statutes**

9 U.S.C. § 9.............................................................................................................2

9 U.S.C. § 10(a)(4)............................................................................................1, 2, 7

9 U.S.C. § 11...................................................................................................1, 16, 17

CAL. CIV. CODE, Div. 3, Pt. 2...................................................................................7

CAL. CIV. CODE, Div. 3, Pt. 3...................................................................................7

CAL. CIV. CODE § 1717(a) ..................................................................................4, 18

CAL. CIV. CODE § 1717(b)(1)..............................................................................5, 18

Fed. R. Civ. P. 54(d)(2)..........................................................................................20

- v -

**Other Authorities**

FINRA Rule 13212 ...........................................................................................................5, 14

Petitioner LPL Financial LLC ("LPL" or "Petitioner") respectfully files this Reply in Support of Its Petition to Confirm Arbitration Award (ECF No. 1) and Opposition to Respondent Eileen Law Cure's ("Cure" or "Respondent") Motion to Vacate, Modify, or Correct the Attorney-Fee Portion of the Award (ECF No. 18) ("Motion" or "Mot.").

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Cure concedes the validity of LPL's arbitral award (the "Arbitration Award" or "Award"), and only challenges the tribunal's award of attorneys' fees. Mot. at 2. Cure complains (1) the fee award cites to multiple bases of authority such that the Court cannot "meaningfully evaluate[]" the Award, and (2) the Award refers to a California statute that does not exist. *Id.* Neither argument justifies Cure's request for vacatur under the Federal Arbitration Act ("FAA") at 9 U.S.C. § 10(a)(4), modification or correction under the FAA at 9 U.S.C. § 11, or remand for clarification. Although Cure repeatedly emphasizes the narrow and extremely limited scope of the Court's review, Cure asks the Court to exceed its authority under the FAA without providing any basis in statute or case law justifying her request. As the fee award is squarely within the authority provided to the arbitral panel by the arbitration agreements at issue, LPL requests that the Court grant its Petition to Confirm Arbitration Award (ECF No. 1) ("Petition"), deny Cure's Motion, and enter judgment against Cure for the full amount of the award, plus post-award interest and costs and fees associated with this action.

## II.    NATURE AND STAGE OF THE PROCEEDING AND STATEMENT OF ISSUES

This is an action to confirm the Arbitration Award (attached as Exhibit A to the Petition) LPL obtained against Cure. *See generally* Petition. LPL filed its Petition on March 16, 2026, requesting a judgment for the full amount of the Award—**$821,504.71** plus 9.0% per annum interest from the date the award was rendered through the date of payment. *See* Petition, Ex. A at

- 1 -

4-5. On June 8, 2026, Cure filed her Motion seeking to vacate the Award, which also served as Cure's response to the Petition. On June 18, 2026, the Court held an initial conference with the parties and subsequently (1) ordered a briefing schedule for the Petition and the Motion and (2) set a hearing for both the Petition and the Motion on July 27, 2026. ECF No. 20.

The following issues are before the Court. First, LPL requests that the Court confirm the Arbitration Award and enter judgment thereon pursuant to 9 U.S.C. § 9 of the FAA. Petition at Section VI. The standard of review on appeal for an order confirming an arbitration award is *de novo*. *United States Trinity Energy Servs., L.L.C. v. Se. Directional Drilling, L.L.C.*, 135 F.4th 303, 307 (5th Cir. 2025). LPL emphasizes, however, that any "judicial review of an arbitration award" in the Fifth Circuit—both at the district court and the appellate level—is "extraordinarily narrow" and "'exceedingly deferential' to the arbitration panel's decision[.]" *Id.* (internal citations omitted).

Second, Cure requests that the Court vacate the fee award portion of the Award pursuant to 9 U.S.C. § 10(a)(4). Mot. at 19. The standard of review on appeal for the denial of a motion to vacate an arbitral award is *de novo*. *Id.*

Third, in the alternative, Cure requests that the Court modify or correct the fee award portion of the Award pursuant to 9 U.S.C. § 11. Mot. at 19. The standard of review on appeal for a denial of a motion to modify or correct an arbitral award is *de novo*. *Diverse Enters., Ltd. Co., L.L.C. v. Beyond Int'l, Inc.*, 827 F. App'x 422, 424 (5th Cir. 2020).

Fourth, in the further alternative, Cure requests that the Court remand the fee award portion of the Award to the arbitral panel for clarification. Mot. at 19. The standard of review on appeal for a denial of a request to remand an arbitral award to the arbitral panel is *de novo*. *Am. Laser Vision, P.A. v. Laser Vision Inst., L.L.C.*, 487 F.3d 255, 258 (5th Cir. 2007), *overruled on other grounds by Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584–86, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008).

Fifth, LPL requests that the Court award it its attorneys' fees associated with this confirmation action. The standard of review on appeal for an award of attorneys' fees is abuse of discretion. *Int'l Ass'n of Machinists & Aerospace Workers, Dist. 776 v. Texas Steel Co.*, 639 F.2d 279, 283 (5th Cir. 1981).

### III. FACTUAL BACKGROUND

LPL's Petition summarizes the history of this proceeding, which began in August of 2022 with Cure suing LPL for $150 million in damages in the United States District Court for the Eastern District of Texas, comprised of $85 million in damages for her personal claims and those of her business entity, Premier Wealth & Retirement Management, and $65 million in damages for claims on behalf of her accounting firm, Cure & Associates. *Cure & Assocs., P.C. v. LPL Fin. LLC*, No. 1:22-CV-00311 (E.D. Tex. filed Aug. 4, 2022) (the "Federal Action"); Petition at Section IV; *see* Declaration of Ronald Smith ("Smith Decl."), Exhibit 1 ("Fee Certification"). Cure's Motion omits the extensive federal court litigation that ensued. *See generally* Mot. Cure also fails to mention that, before she failed to engage and meet her duty of diligence as a participant in the arbitral process, she not only appeared in the arbitration but asserted counterclaims mirroring her personal claims from the Federal Action that sought $85 million in damages. *See* Petition, Ex. A at 4-5; Fee Certification at ¶ 8(b).

Following the December 9, 2025 evidentiary hearing, which included testimony from three witnesses, LPL made post-hearing submissions, which the arbitration panel relied on in part for its findings. Petition, Ex. A at 3-6. The submissions included LPL's Certification of Fees and Costs, submitted on December 18, 2025, via the FINRA DR Portal—where it has at all times been available to Cure. *See generally* Fee Certification. The Fee Certification set out the arbitral panel's authority to grant the fee request, which is the arbitration agreements themselves. *Id.*, ¶¶ 4-6. As set out in Section V of the Petition, the FINRA arbitration panel had jurisdiction over the dispute

- 3 -

between LPL and Cure under two promissory notes dated December 19, 2018, and July 30, 2019, that Cure entered with LPL ("Promissory Notes"), as well as Cure's Form U4 and Representative Agreement. Petition, ¶¶ 24-27.

In the Promissory Notes, Cure agreed to:

[P]ay to LPL the full amount of all costs and expenses, including ***reasonable attorney's fees*** (to include outside counsel fees and all allocated costs of LPL's inhouse counsel), incurred by LPL in connection with ***the enforcement of its rights*** and/or the collection of any amount which becomes due to LPL under this Note ***or the prosecution and defense of any action in any way related to this Note***, including without limitation any action for declaratory relief.

Petition, Ex. K at § 16 (emphasis added); Ex. L at § 17 (same).

In the Representative Agreement between LPL and Cure, the parties agreed:

This Agreement shall be construed in accordance with the laws of the State of California. If [sic] any legal action arising out of any of the terms of this Agreement, ***the prevailing party shall be entitled to reasonable attorney's fees*** in addition to any other relief to which he/she may be entitled.

Petition, Ex. N (Representative Agreement) at § 7(B) (emphasis added).

Further, the Promissory Notes and the Representative Agreement are both subject to California law. *See* Petition, Ex. K at § 16; Ex. L at § 17; Ex. N at § 7(B). As set out in the Fee Certification, California law dictates that "contractual terms awarding attorney's fees to the prevailing party are mandatory and fully enforceable under California law." Fee Certification, ¶ 5. LPL cited to California Civil Code Section 1717(a), which states:

In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, **shall be entitled to reasonable attorney's fees in addition to other costs**.

(emphasis added). California Civil Code Section 1717(b)(1) provides further that "the party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract"—which, in this instance, is LPL.

Lastly, FINRA Rule 13212—a rule under which Cure agreed to arbitrate in the Promissory Notes (Ex. K at § 16; Ex. L at § 17), the Form U4 (Ex. M at § 15A(5)), and the Representative Agreement (Ex. N at § 7(C))—expressly provides that "monetary penalties" and "attorneys' fees, costs and expenses" may be assessed by the arbitral panel for failure to comply with FINRA's Code of Arbitration for Industry Disputes. *See* Fee Certification, ¶ 5.

The Fee Certification details how Cure's pattern of behavior in initiating the Federal Action in breach of her arbitration agreements and her refusal to engage in the arbitration process caused LPL to incur substantial fees and costs. Fee Certification, ¶ 8. In the Fee Certification, LPL broke down the over $2 million incurred in enforcing its rights under the Promissory Notes and defending against Cure's counterclaims into five separate buckets: "Fees and Costs Before Mediation (pre-November 6, 2023)," "Fees and Costs for Mediation and Period Before Cure Filed Counterclaims with FINRA (November 6, 2023 – January 16, 2024)," "Fees and Costs Between Cure's Filing Counterclaims with FINRA and Fifth Circuit Decision (January 17, 2024 – September 30, 2024)," "Fees and Costs After Fifth Circuit's Decision Through 20-Day Disclosures (October 1, 2024 – November 17, 2025)," and "Hearing Attendance and Preparations on December 9, 2025." Fee Certification, ¶¶ 6-7. Each bucket detailed not only the fees incurred, but detailed the tasks associated with those fees, and was supported by a spreadsheet laying out the fees by date and the initial page of each invoice. *Id.*, ¶ 7.

The Arbitration Award set out in findings number 6 through 10 the arbitral panel's decision about each bucket. Petition, Ex. A at 4-5. The panel found that LPL did not meet its "burden of proof regarding the reasonableness" of its request as to the first two buckets (that is, the fees and

- 5 -

costs pre-dating Cure's counterclaims in the FINRA arbitration). *Id.* It did, however, find that the requests for the last three buckets were reasonable, as established by not only the evidentiary record, but the Fee Certification and the legal basis set out therein. *Id.* at 4-5 ("The reasonableness of this request was supported by the testimony and other evidence presented by Claimant, Claimant's post-award submission, the legal basis for Claimant's request, and the procedural history and record of this arbitration."). It concluded in stating the fee award:

> Respondent is liable for and shall pay to Claimant the sum of $640,305.90 in attorneys' fees pursuant to the terms of the Promissory Notes, the Representative Agreement, CAL CIV. CODE § 1707(a), and FINRA Rule 13212. This award of attorneys' fees includes and supersedes the $15,000 in monetary sanctions awarded in the Order on the First Sanctions Motion.

*Id.* at 5.

The panel expressly premised the Arbitration Award on the above-cited arbitration agreements, to which indisputably Cure agreed. On this basis alone, and in light of the deference the Court must show to the panel's Award, Cure's Motion must fail. Cure has identified no basis for the relief she seeks, and her Motion must be denied and LPL's Petition granted.

## IV.    ARGUMENT

**A.**    **The fee award is within the arbitral panel's powers and does not meet the standard for vacatur under 9 U.S.C. § 10(a)(4)**

Cure's primary argument is that the fee award should be vacated under 9 U.S.C. § 10(a)(4) because "the panel specifically held Respondent liable for attorney's fees using several 'conjunctive' rules and laws"—one of which has a typographical error that mistakenly refers to a non-existent California statute rather than the statute originally cited in the Fee Certification—and the fee award therefore "cannot be meaningfully evaluated" by the Court as it would "require the Court to speculate regarding the panel's reasoning and reconstruct a legal basis for the award that the panel itself did not articulate." Mot. at 2-3. The standard for vacatur under Section 10(a)(4),

however, is merely whether the arbitral panel's award "dr[aws] its essence from" the contract at issue. *United States Trinity Energy Servs., L.L.C.*, 135 F.4th at 309–10. Because the fee award is permitted by the contracts, Cure's Section 10(a)(4) claim must be denied.

### 1.     Cure does not identify a valid basis for vacatur under 9 U.S.C. § 10(a)(4).

9 U.S.C. § 10(a)(4) provides that a federal court "in and for the district wherein the award was made" may vacate an arbitration award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." Cure does not allege that the arbitral panel exceeded its authority. She also does not allege that the award is not mutual, final, or definite. Instead, she claims only that the Award (a) has a typographical error and (b) relies on multiple sources of authority. She does not explain how either of these complaints would justify relief under Section 10(a)(4). This alone is fatal to her Motion.

### 2.     The typographical error in the award is not grounds to vacate.

Cure's primary argument rests on a clear typographical error, as the arbitral panel wrote at one part of the award that it was awarding "attorneys' fees pursuant to the terms of the Promissory Notes, the Representative Agreement, CAL CIV. CODE § 1707(a), and FINRA Rule 13212" (Petition, Ex. A at 5)—but California Civil Code Section 1707(a) does not exist. *See* CAL. CIV. CODE, Div. 3, Pt. 2 (ending at § 1701); Pt. 3 (starting at § 1708). First, it is clear from the Fee Certification that the arbitral panel intended to reference Section 1717(a), as LPL cited Section 1717(a) and 1717(b)(1) in its Fee Certification, and the panel's mistake stems from a typographical error in LPL's proposed award. Second, the typographical error is of no consequence, as the contractual bases for the award are clearly stated, ending the Court's limited vacatur inquiry.

a       The record establishes that the arbitral panel intended to refer to California Civil Code Section 1717(a).

The Arbitration Award grants LPL three buckets of fees and costs, finding for each that the "reasonableness of this request was supported by the testimony and other evidence presented by Claimant, ***Claimant's post-award submission, the legal basis for Claimant's request***, and the procedural history and record of this arbitration." Petition, Ex. A at 5 (emphasis added). The Fee Certification is the post-hearing submission wherein LPL set out, in detail, the evidence and legal basis for its requests for attorneys' fees that the arbitral panel granted. Fee Certification at 1. As explained above, both the Promissory Notes and the Representative Agreement under which the arbitrations arose provide for the recovery of attorneys' fees for legal actions related to those agreements. *Id.*, ¶¶ 4-5. As both the Promissory Notes and the Representative Agreement are governed by California law, LPL also cited to California Civil Code Sections **1717**(a) and **1717**(b)(1) in arguing that the attorneys' fee provisions are mandatory and fully enforceable under California law. *Id.*, ¶ 5.

Later in the Arbitration Award, however, the arbitral panel found that "Respondent is liable for and shall pay to Claimant the sum of $640,305.90 in attorneys' fees pursuant to the terms of the Promissory Notes, the Representative Agreement, CAL. CIV. CODE § **1707**(a), and FINRA Rule 13212." Petition, Ex. A at 5 (emphasis added). As Cure states, there is no California Civil Code Section 1707. Mot. at 2. As Cure also notes, this section of the Arbitration Award is copied from LPL's Proposed Award. Mot. at 8, 14; *see* Smith Decl., Exhibit 2. The Proposed Award contained a typographical error, mistakenly referring to non-existent Section 1707 instead of the existent (and directly applicable and already-cited) Section 1717. Smith Decl., Exhibit 2. Therefore, the arbitral panel's reference to the non-existent Section 1707 is a mere typographical error that stemmed from LPL's own initial typographical error.

Because Section 1707 does not exist, there is no confusion over whether LPL or the arbitral panel actually intended to rely on it. Cure's assertion that the panel may have analyzed and relied on a non-existent statute is non-sensical—there is nothing to review or rely on. Rather, LPL's Fee Certification correctly identified Section 1717 as a basis for enforcement of the attorneys' fee provisions. Fee Certification, ¶¶ 4-5. The Award clearly states that the arbitral panel relied on LPL's post-hearing submissions to render the fee award. *See* Petition, Exhibit A at 5 ("After considering . . . post-hearing submissions, the Panel has decided in full and final resolution of the issues . . ."). It is therefore reasonable to conclude that the arbitral panel intended to reference Section 1717 in rendering its award, and the reference to non-existent Section 1707 was a mere typographical error.

> b    The Tribunal also cited the arbitration agreements giving rise to the arbitration to render the fee award, thereby ending the Court's inquiry.

In any event, the typographical error is of no consequence. The Award states the arbitral panel relied upon and applied the terms of the Promissory Notes, the Representative Agreement, and the FINRA Rules agreed to by Cure in rendering the fee award. Petition, Ex. A. Therefore, because the arbitral panel was acting within its powers granted under the referenced contracts and FINRA Rules, the Court must reject Cure's arguments under 9 U.S.C. Section 10(a)(4) and confirm the Award.

As LPL noted in Section A(1), Cure's Section 10(a)(4) fails to clearly state an argument under the statute—it is not clear if Cure argues that the panel's typographical error constitutes an excess of powers, or if Cure argues that the typographical error renders the award not mutual, final, and definite (and, as noted above, this flaw alone is fatal to her argument). Cure's argument fails to meet the "heavy burden" of either prong. *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569, 133 S. Ct. 2064, 2068 (2013).

(a)    The fee award is within the arbitral panel's authority under the applicable contracts.

In weighing a Section 10(a)(4) excess of powers argument, the question before the Court "'is not whether the arbitrator[s] construed the parties' contract correctly, but whether [they] construed it at all." *United States Trinity Energy Servs., L.L.C.*, 135 F.4th at 308 (5th Cir. 2025) (quoting *Oxford Health*, 569 U.S. at 573). "Under this section, merely 'convincing a court of an arbitrator's error—even his grave error—is not enough.'" *Id.* (quoting *Oxford Health*, 569 U.S. at 572). "In simpler terms, '[t]he potential for . . . mistakes is the price of agreeing to arbitration.'" *Id.* (quoting *Oxford Health*, 569 U.S. at 572-73). Whether the arbitration award "drew its essence from" the contract, "[l]ike alpha and omega, . . . is the beginning and the end of our inquiry under § 10(a)(4)." *Id.* at 309-10. An award draws its essence from the contract if it "'is rationally inferable from the contract.'" *Sullivan v. Feldman*, No. H-20-2236, 2022 U.S. Dist. LEXIS 228367, at *37 (S.D. Tex. Dec. 19, 2022) (quoting *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1325 (5th Cir. 1994)). In weighing whether an arbitral panel exceeded its authority, "courts resolve doubts in favor of arbitration." *Id.*

In *United States Trinity Energy Services, L.L.C.*, the Fifth Circuit found that the "final award reveal[ed] the arbitration panel reviewed the evidence presented [and] considered the effects of various provisions in the" contract at issue in granting relief. 135 F.4th at 308-09. That alone was sufficient to determine the award drew its essence from the contract. *Id.* ("Our court does not require more."). In *Diverse Enterprises, Limited Company, L.L.C. v. Beyond International, Inc.*, the Fifth Circuit upheld an arbitral panel's award of attorneys' fees in excess of those actually incurred, because the contracts (1) had broad arbitration agreements and (2) granted the prevailing party reasonable attorneys' fees and costs. 827 F. App'x 422, 425 (5th Cir. 2020) (noting that arbitration agreements covering "any claim or controversy arising out of or relating to" a contract

- 10 -

is broad). This alone was also sufficient to confirm the award was rationally inferred from (and therefore drew its essence from) the contract. *Id.* Further, the Fifth Circuit declined consideration of whether "the arbitration panel mistakenly applied the law," as "this error is not grounds for vacating or modifying an arbitral award." *Id.* at 425, n.3.

Here, the Arbitration Award states multiple times that the arbitral panel reviewed the evidence presented, considered the effects of Cure's Promissory Notes and the Representative Agreement, and granted LPL relief based on the contracts. Petition, Ex. A. As to the fee award, it states that Cure is liable "pursuant to the terms of the Promissory Notes, the Representative Agreement, CAL. CIV. CODE § 1707(a), and FINRA Rule 13212." *Id.* at 5. Further, the arbitration agreements under which the arbitration arose are broad.[1] Just as in *United States Trinity Energy Services* and *Diverse Enterprises*, these facts are sufficient to establish that the Arbitration Award, inclusive of the fee award, is rationally inferred from and drawn from the essence of Cure's Promissory Notes and the Representative Agreement and must be enforced. Further, because Cure explicitly agreed to the attorneys' fees provisions (*see* Petition, Ex. K at § 16; Ex. L at § 17; Ex. N at § 7(B)), the arbitral panel's fee award was drawn from the essence of the contracts, and the vacatur inquiry ends there.

Cure nonetheless argues (without citing any authority) that the Court cannot "determine what the panel intended to cite," "the significance of the citation," or "whether the citation was material to the amount awarded"—and that "[a]ny conclusion regarding the panel's intent would necessarily be speculative." Mot. at § V. She argues that the Court is left with an "unresolved

---

[1] *See* Petition at ¶¶ 24-27 (explaining that the Promissory Notes' arbitration agreements are for "[a]ny controversy or claim arising out of or relating to" the Promissory Notes; the Form U4's arbitration agreement is for "any dispute, claim or controversy that may arise between [Cure] and [LPL];" and the Representative Agreement's arbitration agreement is for "any and all disputes, claims or controversies relating to Representative's association with or termination from LPL.").

- 11 -

question" of "what role [] the cited authorities play[ed] in the panel's ultimate determination[.]" *Id.* at 15. Cure ignores, however, that the Court ***cannot*** ask such questions in a vacatur analysis. Just as the Fifth Circuit found in *Diverse Enterprises*, there are no grounds for reviewing the panel's application of California law, as even a mistaken application of the law is not a basis for vacatur. *Diverse Enters., Ltd. Co., L.L.C.*, 827 F. App'x at n.3 ("'Courts ... do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.'") (citing *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)). And, a mere typographical error is insufficient to sustain vacatur in any event. *Oxford Health*, 569 U.S. at 572-73. Because the arbitral tribunal's application of California law is wholly unreviewable, the Arbitration Award's mere typographical error regarding California law cannot sustain a Section 10(a)(4) request to vacate.

(b)      The fee award is mutual, final, and definite.

A mutual, final, and definite award "must both resolve all the issues submitted to arbitration, and determine each issue fully so that no further litigation is necessary to finalize the obligations of the parties under the award." *Lummus Glob. Amazonas S.A. v. Aguaytia Energy del Peru S.R. Ltda.*, 256 F. Supp. 2d 594, 639 (S.D. Tex. 2002), *decision modified on denial of reconsideration* (June 14, 2002) (Rosenthal, J.) (internal citations and quotations omitted). "The ultimate question is whether the arbitration panel rendered a decision that settled the disputed issues." *Id.* If the award is "sufficiently specific as to be capable of implementation" and "to be enforced," and "the party against whom the award runs . . . know[s] how to comply with it," then it is final and definite. *McVay v. Halliburton Energy Servs.*, 608 F. App'x 222, 225 (5th Cir. 2015) (internal citations and quotations omitted). For example, in *Lummus*, the Court vacated a portion of an arbitral award that set out a method for calculating future tax liability as part of the damages

- 12 -

award, which the Court determined did not fully resolve the dispute issues. *Lummus Glob. Amazonas S.A.*, 256 F. Supp. 2d at 639.

Here, the fee award is unambiguously mutual, final, and definite—the arbitral panel addressed each of the buckets of fees LPL sought in its Fee Certification, and it has ordered Cure to pay $640,305.90 in attorneys' fees. Petition, Ex. A. at 5. There was no issue before the arbitral panel left undecided, and there is no question about the amount Cure must pay LPL—Cure knows how to comply with the Award from its face. The mere typographical error regarding California law is insufficient to create any such ambiguity, and is, again, insufficient to sustain vacatur. *Oxford Health*, 569 U.S. at 572-73.

### 3. The arbitral panel's reliance on multiple sources of authority to render the fee award is permissible and must be enforced.

Cure also argues that the fee award "improperly merged contractual attorney's fees and FINRA sanctions" using "the conjunctive 'and,'" alleging that this makes "it impossible for the Court to determine if the award is valid according to contract." Mot. at 2; § VI. Cure argues the fee award relies on multiple sources of authority that "serve different purposes . . . while providing no explanation regarding how each authority contributed to the final amount awarded." Mot. at 10, 13. Cure complains that the fee award states that it "includes and supersedes" the prior sanctions. *Id.* at 11. She argues that the Court "cannot determine what authority supports the amount awarded and whether the award is permitted by law and rule, and which law or rule supports the award." *Id.* at 11-13. She argues "the Award contains no allocation," and the Court "is therefore unable to determine whether the award falls entirely within the scope of the contractual fee provisions identified by the panel or whether portions of the award rest upon other sources of authority." *Id.* at 12-13. Cure claims this so-called "uncertainty independently supports vacatur[.]" *Id.* at 12.

As a threshold issue, Cure misunderstands FINRA Rule 13212. She takes issue with the arbitral panel's reference to Rule 13212 in rendering the fee award, arguing (without citing to any authority) that "attorney's fees and sanctions are not interchangeable concepts." Mot. at 11. But, FINRA Rule 13212 provides that an arbitral panel "may sanction a party for failure to comply with any provision in the Code, or any order of the panel," and that "sanctions may include, but are not limited to . . . assessing attorney's fees, costs and expenses." Therefore, it is entirely permissible for the arbitral tribunal to incorporate sanctions into the fee award on the face of the FINRA Rules, as fee awards may be awarded as sanctions.

However, Cure's arguments are irrelevant because she not only concedes that "the panel possessed authority to impose sanctions" (Mot. at 12), she also does not contest the panel's authority under the Promissory Notes' and the Representative Agreement's attorney fee provisions. *See generally* Mot. This is fatal to Cure's Motion. Put succinctly, as Cure cannot and does not contest that the fee award is within the panel's powers, she fails to even argue that the panel exceeded its powers under Section 10(a)(4). There is accordingly no basis for vacatur.

Cure instead complains that the arbitral tribunal relied on multiple sources of authority (all of which, again, she concedes or does not contest were valid) and "awarded a single undifferentiated amount without identifying what categories of fees were included in that figure." Mot. at 13-14. But, as Cure correctly concedes, arbitrators are not "required to issue detailed findings in every case." *Id.* at 13. "It has long been settled that arbitrators are not required to disclose or explain the reasons underlying an award." *Antwine v. Prudential Bache Sec., Inc.*, 899 F.2d 410, 412 (5th Cir. 1990) (citing *United Steel Workers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960)). "The policy behind such a rule is manifest. If arbitrators were required to issue an opinion or otherwise detail the reasons underlying an arbitration award, the very purpose of arbitration—the provision of a relatively

- 14 -

quick, efficient and informal means of private dispute settlement—would be markedly undermined." *Id.*

Despite her concession, Cure goes on to complain that the Court cannot determine which authority supported which portion of the fee award. Mot. at 1-13. As with her misguided argument that the Court must analyze the arbitral panel's legal reasoning, Cure again asks the Court to engage in an impermissible inquiry under Section 10(a)(4). The Court "cannot[] second-guess the panel's reasons for allocating the attorneys' fees and expenses as it did"—the Court cannot vacate the Arbitration Award even if it disagreed with the arbitral panel's interpretation of the contracts at issue. *Soaring Wind Energy, LLC v. CATIC USA, Inc.*, 333 F. Supp. 3d 642, 662 (N.D. Tex. 2018), *aff'd sub nom. Soaring Wind Energy, L.L.C. v. Catic USA Inc.*, 946 F.3d 742 (5th Cir. 2020).

A challenge to the arbitral panel's allocation of its fee award to certain buckets of authority—if Cure could even identify any basis for demanding such allocation—or its explanation of its authority under the contracts is, at bottom, an attack on the panel's contractual interpretation which is not permitted in the Fifth Circuit. In *Halliburton Energy Services, Inc.*, the Court considered a motion to vacate premised on an arbitral panel's award of prejudgment interest that did not specify what the panel relied on in making its award. *Halliburton Energy Servs., Inc. v. NL Indus.*, 553 F. Supp. 2d 733, 768 (S.D. Tex. 2008) (Rosenthal, J.). While there were multiple potential bases for the award, the Court concluded in declining to vacate that "[t]his court may not second-guess how the panel arrived at its decision." *Id.* at 769. It declined to "'second-guess multiple, implicit findings and conclusions underpinning the award'" or "'decide if the award was free from error.'" *Id.* (quoting *Am. Laser Vision, P.A. v. Laser Vision Inst.*, L.L.C., 487 F.3d 255, 260 (5th Cir. 2007) (per curiam)). "'We decide only that it is not the kind of extraordinary award that ineluctably leads to the conclusion that the arbitrator was dispensing his own brand of

industrial justice.'" *Id.* (quoting *Am. Laser Vision, P.A.*, 487 F.3d at 260). *Halliburton Energy Services, Inc.* demonstrates that the Court does not need to—and, in fact, should not—determine what authority supported which portion of the fee award. Unlike the award in *Halliburton Energy Services, Inc.*, the award in this case contains explicit references to multiple bases for the panel's award, showing even more clearly that Cure's requests for this Court to intervene must fail.

Again, the sole question remains whether the fee award draws its essence from the contracts at issue. The panel clearly based the fee award on multiple contracts and FINRA's own rules, and the text of the contracts show that Cure agreed to multiple fee-shifting provisions. Cure has conceded or does not challenge this point, and the Court's inquiry ends there. There is no requirement under law or the FINRA Rules that the arbitral panel must apportion the fee award according to what authority it was exercising—nor does Cure identify one, much less cite to any authority in support of her argument. The Court should reject Cure's argument, which not only lacks citations to any legal authority, but runs counter to the body of federal case law on vacatur of arbitration awards.

**B.**     <u>**Cure's request for modification, correction, or clarification fails to meet any legal standard.**</u>

Cure makes two alternative requests for relief, both of which fail on their face. Mot. at 16-18. First, Cure requests that the Court modify or correct the Award under 9 U.S.C. Section 11. *Id.* at 16. Section 11 permits courts to "make an order modifying or correcting the award" where there is (a) "an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award," (b) "[w]here the arbitrators have awarded upon a matter not submitted to them," or (c) "[w]here the award is imperfect in matter of form not affecting the merits of the controversy" and the modification or correction would "effect the intent thereof and promote justice between the parties."

- 16 -

Cure fails to identify any subsection of Section 11 that justifies her request, much less that establishes relief is due under Section 11 at all. Mot. at 16. Cure does not claim there is an "evident material mistake," that the arbitrators made an award on any matter not submitted to them, or that there is an imperfection for the Court to correct that would "effect the intent" of the arbitral panel— she instead summarizes her complaints about the typographical error regarding the California Civil Code and that the fee award is not allocated by authority without making any effort to tie those complaints to the relief she seeks. *Id.* In fact, Cure repeatedly argues that the Court "cannot … speculate" about the fee award (*see* Mot. at 9)—which runs counter to Cure's request under Section 11, which must be based on an "evident" mistake or give "effect" to the arbitral panel's "intent."

Further, Cure does not even identify what correction or modification she proposes the Court make, which alone is fatal to her request. Cure concedes that relief under Section 11 is "a narrow remedy," and her failure to even identify what relief she seeks or the basis for that relief fails to justify the extraordinary relief she seeks. *See Apache Bohai Corp., LDC v. Texaco China B.V.*, No. H-01-2019, 2005 WL 6112664, at \*10 (S.D. Tex. Feb. 28, 2005), *subsequently aff'd sub nom. Apache Bohai Corp. LDC v. Texaco China BV*, 480 F.3d 397 (5th Cir. 2007) (declining to modify or correct award where movant "mention[ed] 9 U.S.C. § 11(a)," but made "no argument in support of correction or modification pursuant to the terms of that provision").

Second, Cure asks that the Court remand the Award to the arbitral tribunal for clarification. Cure, again, provides no legal basis or authority for her request. *See* Mot. at 16-18. There is no basis in the FAA for such relief. While the Fifth Circuit permits remand for clarifications, "[r]emand is rare" and is only appropriate "'where an award is patently ambiguous, when the issues submitted were not fully resolved, or when the language of the award has generated a collateral dispute.'" *Am. Laser Vision, P.A.*, 487 F.3d at 260 (quoting *Oil, Chem., & Atomic Workers Int'l Union v. Rohm & Haas, Tex., Inc.*, 677 F.2d 492, 495 (5th Cir. 1982)). Cure has not claimed, much

- 17 -

less proven, that the Award is patently ambiguous, leaves issues unresolved, or has generated a collateral dispute that requires resolution by the arbitral panel. Accordingly, her request must be denied.

**C.      LPL is entitled to its attorney's fees in this proceeding.**

As explained above, the Promissory Notes and the Representative Agreement that the Arbitration Award arises out of include attorneys' fee provisions. *See supra*, Section III. Both the Promissory Notes and the Representative Agreement are subject to California law. *See id.* California law dictates that contractual terms awarding attorney's fees to the prevailing party are mandatory and fully enforceable under California law. *See* CAL. CIV. CODE § 1717(a) ("In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, ***shall be entitled to reasonable attorney's fees in addition to other costs***.") (emphasis added); *id.* at § 1717(b)(1) ("[T]he party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract."). Courts applying Section 1717(a) find that actions to confirm or vacate arbitral awards are actions "on a contract," and therefore enforce attorneys' fees provisions in those actions. *See, e.g.*, *Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.*, 791 F.2d 1334, 1340 (9th Cir. 1986) (applying Section 1717 and finding that, where a contract provided "entitle[ment] to attorney fees in actions to enforce the contract," an action to confirm an arbitral award was "based on the contract and therefore the contractual provision for attorney fees applies"); *In re Penrod*, 802 F.3d 1084, 1087-88 (9th Cir. 2015) ("[T]he action in which the fees are incurred must be an action 'on a contract,' a phrase that is liberally construed. . . . Under California law, an action is 'on a contract' when a party seeks to enforce, or avoid enforcement of, the provisions of the contract.").

- 18 -

In the Promissory Notes, Cure agreed to pay LPL for attorney's fees, costs, and expenses "incurred by LPL in connection with the ***enforcement of its rights*** and/or the collection of any amount which becomes due to LPL under this Note ***or the prosecution and defense of any action in any way related to this Note***[.]" Petition, Ex. K at § 16 (emphasis added); Ex. L at § 17 (same). The "enforcement of its rights" language is sufficient to justify an award of attorneys' fees for this action, as LPL herein ultimately seeks to enforce its rights under the Promissory Agreements recognized in the Arbitration Award. *See Lafarge Conseils Et Etudes, S.A.*, 791 F.2d at 1340 (applying Section 1717 and finding that, where a contract providing "entitle[ment] to attorney fees in actions to enforce the contract," an action to confirm an arbitral award was "based on the contract and therefore the contractual provision for attorney fees applies"); *see also NAFTA Holdings, LLC v. First Nat'l Bank Grp. Inc.*, No. CV B: 13-221, 2014 WL 12588518, at *13 (S.D. Tex. Mar. 20, 2014) (finding a clause providing attorney's fees for "enforcement or preservation of the [plaintiff's] rights" broad enough "to cover fees incurred in the process of confirming the arbitration award"); *Pillar to Post, Inc. v. Weible*, No. CIV.A. H-09-3227, 2010 WL 2636121, at *2 (S.D. Tex. June 29, 2010) (finding that attorneys' fees provision for "enforcement of" a specific contract provision entitled plaintiff to attorneys' fees for an action to enforce an arbitral award arising from that same contractual provision).

While the Promissory Notes are alone sufficient authority for the Court to award attorneys' fees, Cure also agreed in the Representative Agreement that, for "any legal action arising out of any of the terms of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees in addition to any other relief to which he/she may be entitled." Petition, Ex. N at § 7(B). This provision is also broad enough to encompass this confirmation action, as this action is a legal action in part premised on (and dealing with, given the arguments raised in Cure's vacatur motion) the terms of the Representative Agreement. *See, e.g., Space Data Corp. v. Hosie Rice LLP*, No.

- 19 -

20-cv-08256-JSW, 2021 U.S. Dist. LEXIS 263088, at *8 (N.D. Cal. Nov. 1, 2021) (finding that clause for attorney's fees for the prevailing party "in any such disputes" "arising out of" the contract enforceable as to cross actions to confirm and vacate an arbitration award).

LPL requests that, upon a finding that it is entitled to attorneys' fees and upon the conclusion of this action, it be permitted to file a motion under Federal Rule of Civil Procedure 54(d)(2) stating the amount sought.

## V.   CONCLUSION

For the foregoing reasons, LPL respectfully requests that the Court grant its Petition, deny Cure's Motion, and award LPL attorney's fees related to this action, as well as any other relief to which LPL may be entitled.

- 21 -

Dated:  July 2, 2026

OF COUNSEL
NORTON ROSE FULBRIGHT US LLP
Ronald D. Smith
State Bar No. 24056344
Federal I.D. No. 3171976
ron.smith@nortonrosefulbright.com
2200 Ross Avenue, Suite 3600
Dallas, TX 75201-7932
Telephone:     (214) 855-8000
Facsimile:     (214) 855-8200

Todd D. Batson
State Bar No. 24068928
Federal I.D. No. 1062322
todd.batson@nortonrosefulbright.com
Taylor J. LeMay
State Bar No. 24110862
Federal I.D. No. 3471137
taylor.lemay@nortonrosefulbright.com
1550 Lamar Street, Suite 2000
Houston, TX  77010
Telephone:     (713) 651-5151
Facsimile:     (713) 651-5246

Respectfully submitted,

/s/ Todd D. Batson

Ellen Sessions
State Bar No. 00796282
Federal ID No. 21531
ellen.sessions@nortonrosefulbright.com

2200 Ross Avenue, Suite 3600
Dallas, TX 75201-7932
Telephone:     (214) 855-8000
Facsimile:     (214) 855-8200

**ATTORNEY-IN-CHARGE FOR PETITIONER**

- 22 -

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served in compliance with the Federal Rules of Civil Procedure upon all counsel of record via the Court's CM/ECF system on July 2, 2026.

*/s/ Todd D. Batson*
Todd D. Batson